**FLAG DRILLING COMPANY, INC., Appellant,**

v.

**ERCO, INC., and Commonwealth of Kentucky, Revenue Cabinet, Appellees.**

**Nos. 2003–CA–002244–MR, 2003–CA–002521–MR.**

Court of Appeals of Kentucky.

Jan. 28, 2005.

Daniel N. Thomas, Hopkinsville, KY, for Appellant.

John E. Swain, Jr., Hopkinsville, KY, for Appellee Commonwealth of Kentucky, Revenue Cabinet.

Before COMBS, Chief Judge; JOHNSON and MINTON, Judges.

## OPINION

MINTON, Judge.

Unpaid property tax bills may be sold by the county sheriff to become certificates of delinquency in the hands of the purchaser. The holder of a certificate of delinquency may, after a one-year period, institute a collection action or a tax lien foreclosure action, or both, against the delinquent taxpayer. Between 1995 and 2000, Erco, Inc. failed to pay property taxes; and its delinquent tax bills were sold. Flag Drilling Company, Inc., one of the owners of Erco's certificates of delinquency, filed suit in the circuit court to recover the amount of certificates it had purchased and to foreclose the tax liens associated with the certificates. Following a judicial sale of the assessed property, the circuit court awarded Flag Drilling the principal amount of its certificate and interest. But the court declined to award attorney's fees. Flag Drilling appeals, claiming that it is due attorney's fees under KRS[1] 134.420(1) and KRS 134.490 or, alternatively, under KRS 421.070, the codification of the common fund doctrine and the substantial benefit principle. Because we believe Flag Drilling's reliance on KRS 134.420(1) is proper and that it should have recovered reasonable attorney's fees, we reverse, in part, and remand.

In 1990 Erco, a Kentucky corporation, became the owner of 122 acres in Christian County that it used primarily for oil and gas production. The county annually assessed ad valorem property taxes against Erco for state, county, school taxes, and special taxing district assessments based upon the value of the oil and gas production and the real estate. In 1997, the Kentucky Revenue Cabinet filed a state tax lien affecting Erco's real property for its failure to file state corporate income and state license taxes. About that same time, Erco also fell behind in its property tax payments. As authorized by KRS 134.450, the Christian County Sheriff offered those delinquent property tax claims for sale to the public.

On November 17, 1999, Kelly Williams, the president of Flag Drilling Company, Inc., bought one of the delinquent tax claims. He later assigned his ownership of this certificate to Flag Drilling. Flag Drilling itself bought another delinquent tax claim in its own name on May 16, 2000. The total of the two certificates of delinquency at the time of payoff was $784.97.

On February 11, 2003, Flag Drilling filed suit in circuit court to recover on its certificates of delinquency, with interest, and to enforce the tax liens on the Erco property. The company also requested attorney's fees under KRS 134.420(1). Flag Drilling's complaint also named other lienholders, Christian County, Kentucky, and the Commonwealth of Kentucky, Revenue Cabinet as defendants.

---

1. Kentucky Revised Statutes.

The Revenue Cabinet filed an answer and cross-claim to Flag Drilling's complaint asserting its lien rights against Erco's property. The cross-claim stated that Erco owed the Revenue Cabinet $69,230.36 as of March 8, 2003, plus additional interest thereafter.

After Erco filed its answer, Flag Drilling moved for summary judgment. But before its motion could be heard, Jeffery Major, another private individual owning a certificate of delinquency for Erco's tax claims, moved to intervene to assert a cross-claim under his own certificate of delinquency. On April 16, 2003, the court allowed Major to intervene to assert his cross-claim.

Three months later, judgment was entered awarding Flag Drilling $784.97 for its certificates of delinquency, along with court costs in the amount of $157.76. The Revenue Cabinet was awarded judgment in the sum of $69,718.58. The court ordered that Erco's interest in the 122–acre tract be sold at a judicial sale to satisfy the judgments. The parties were directed to file proof of claims and objections prior to the sale.

Thereafter, Flag Drilling filed a claim for reimbursement of its attorney's fees and Erco objected. Specifically, Erco claimed that Flag Drilling's reliance on KRS 134.420(1) was misplaced. On September 18, 2003, an order was entered denying Flag Drilling's claims to reimbursement and providing judgment for Major in the amount of $1,588.94. The property was ordered to be sold by a special commissioner of the circuit court. Flag Drilling then filed its first Notice of Appeal.

Approximately one month later, the commissioner made his report of sale. The report stated that Kelly Williams had purchased the property for $87,000. After payment of the commissioner's fee and the costs associated with the sale, the total amount remaining in the hands of the commissioner to satisfy the judgment against Erco was $84,220.84. Since this amount was more than enough to satisfy the judgment debt owed to Flag Drilling, Major, and the Revenue Cabinet, Erco was to be awarded the surplus.

On November 5, 2003, the court entered an order confirming the commissioner's report of sale. The commissioner was ordered to execute and deliver a deed to the property to Williams. In response to this order, Flag Drilling filed a second Notice of Appeal. On January 8, 2004, the two appeals were consolidated.

Flag Drilling makes three arguments: first that the trial court erroneously denied its claim for reimbursement of attorney's fees; second, that the trial court erroneously awarded the Revenue Cabinet $69,230.76 "based only upon annual estimates of taxes due the Cabinet, which were arbitrary and speculative"; and third that the provisions of KRS 426.705 requiring a purchaser of property to pay interest at 12 percent per annum from the date of purchase until the deed is transferred violates sections 2, 3, 27, and 28 of the Kentucky Constitution and conflicts with CR[2] 53.

We acknowledge that Erco, one of the appellees in this consolidated appeal, did not file a brief. Flag Drilling argues that this failure automatically sustains its positions with regard to its first and third arguments; therefore, it claims that "this Court would be proper in reversing either of those portions of the Christian Circuit Court's Orders and Judgments based upon either § (i)(ii) or (iii) of CR 76.12(8)(c)." Those sections state that an appellee that

---

**2.** Kentucky Rules of Civil Procedure.

fails to file a brief may be penalized in three distinct ways.

■ Although Flag Drilling would have us read the penalty provisions of CR 76.12(8)(c) as mandatory, we are confident that "[t]his rule merely provides penalty options which an appellate court **may, in its discretion,** impose for failure to file a brief." [3] We do not believe that reversal is warranted based solely upon Erco's failure to respond in this case; so we will address the merits of each of Flag Drilling's arguments.

## REIMBURSEMENT OF ATTORNEY'S FEES

As its first argument, Flag Drilling claims that it should have been awarded attorney's fees based on the provisions of KRS 134.420(1) and KRS 134.490 or, alternatively, under the terms of KRS 421.070, the common fund doctrine and the substantial benefit principle.

■ We note that there is no evidence in the record that the issue of attorney's fees pursuant to KRS 134.490, KRS 421.070, the common fund doctrine or the special benefits principle were actually presented to the trial court for a ruling. Thus, these arguments are not preserved for appeal. But since we agree that Flag Drilling is owed reasonable attorney's fees under KRS 134.420(1), Flag Drilling's failure to preserve its other arguments is harmless error. Therefore, our reversal is based solely on the reimbursement of attorney's fees under KRS 134.420(1).

■ When a claim for reimbursement of attorney's fees is made, our courts adhere to what is referred to as the "American Rule." This rule provides that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." [4] "Under our law, attorney's fees are not allowable as costs in absence of statute or contract expressly providing therefore." [5] Although attorney's fees may be awarded in equity, these awards are "largely within the discretion of the court" and are dependent upon "the facts and circumstances of each particular case." [6]

■ Flag Drilling argued before the trial court and reasserts on appeal that the language of KRS 134.420(1), entitled "Lien for taxes," provides a claim for reimbursement of its attorney's fees. Reliance on this statute stems from KRS 134.490(2)(b), which states that a private owner of a certificate of delinquency may "[i]nstitute an action to enforce the lien provided in subsection (1) of KRS 134.420...." The applicable portion of KRS 134.420(1) reads:

> The state and each county, city, or other taxing district shall have a lien on the property assessed for taxes due them respectively for ten (10) years following the date when the taxes become delinquent, and also on any real property owned by a delinquent taxpayer at the date when the sheriff offers the tax claims for sale as provided in KRS 134.430 and 134.440. This lien shall not be defeated by gift, devise, sale, alienation, or any means except by sale to a

---

**3.** *Kupper v. Kentucky Board of Pharmacy,* 666 S.W.2d 729, 730 (Ky.1983) (emphasis added).

**4.** *Alyeska Pipeline Service Company v. The Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *see also, Dulworth & Burress Tobacco Warehouse Company v. Burress,* 369 S.W.2d 129, 130 (Ky.1963).

**5.** *Kentucky State Bank v. Ag Services, Inc.,* 663 S.W.2d 754, 755 (Ky.App.1984).

**6.** *Dorman v. Baumlisberger,* 271 Ky. 806, 113 S.W.2d 432, 433 (1938).

bona fide purchaser, but no purchase of property made before final settlement for taxes for a particular assessment date has been made by the sheriff shall preclude the lien covering the taxes. The lien shall include all interest, penalties, fees, commissions, charges, costs, reasonable attorney fees, and other expenses incurred by reason of delinquency in payment of the tax bill or certificate of delinquency or in the process of collecting either, and shall have priority over any other obligation or liability for which the property is liable.

We agree with Flag Drilling's contention that this statute provides for the reimbursement of its attorney's fees. KRS 134.490(2)(b) states that a private owner of a certificate of delinquency may enforce the lien provided for by KRS 134.420(1). KRS 134.420(1) automatically grants a state, county, city, or taxing district a lien on property when a taxpayer fails to pay taxes. When a private party acquires a certificate of delinquency that party essentially purchases the right to claim the lien that has been imposed by KRS 134.420(1).

We believe that by giving a private purchaser of a delinquent tax claim a means to enforce the lien, KRS 134.490(2)(b) allows that purchaser to stand in the shoes of the state, county, city, or taxing district in whose name the lien has been imposed. By doing so, the statute gives the private owner of a certificate of delinquency a feasible means of recovering its tax claims.

KRS 134.420(1) states that a lien imposed by the state, county, city, or taxing district shall include "reasonable attorney's fees." Because KRS 134.490(2)(b) permits a private purchaser to enforce the lien imposed under KRS 134.420(1), we hold that a purchaser necessarily has the right to collect its reasonably expended attorney's fees.

Flag Drilling, as a private purchaser of several certificates of delinquency, had the right to enforce the lien that was created when Erco failed to pay its taxes to the Sheriff of Christian County. Based on our analysis, Flag Drilling also had the statutory right to be reimbursed for its reasonable attorney's fees to collect the certificate of delinquency. Because Flag Drilling had a proper claim to reimbursement under KRS 134.420(1), we must reverse the circuit court's denial of its request for attorney's fees and remand the case to the circuit court for it to determine a reasonable attorney's fee for Flag Drilling.

### THE REVENUE CABINET'S $69,230.76 JUDGMENT

Flag Drilling's second argument is that the circuit court erroneously awarded the Revenue Cabinet $69,230.76 without any actual proof of the amount owed by Erco. Specifically, Flag Drilling alleges that the amounts claimed by the Revenue Cabinet were "arbitrary" and "speculative."

In its original brief before this Court, Flag Drilling erroneously argued "that those monies distributed to the Revenue Cabinet by the Clerk" should "be ordered repaid to the Clerk by the Revenue Cabinet for the purposes of the payment of the Appellant's attorney's fees from the 'common fund'. . . ." However, in its reply brief, Flag Drilling retracted this portion of its argument after it was advised that no monies had yet been paid out to the Revenue Cabinet from the Clerk. Thus, alternatively, Flag Drilling argued that its attorney's fees should be paid from the surplus funds awarded to Erco.

We again note that regardless of the approach taken to this argument, Flag Drilling did not preserve this issue before the trial court. It is well settled that "a question not raised or adjudicated in the

court below cannot be considered when raised for the first time in this court."[7] This Court will only address such issues if they constitute "a palpable error which affects the substantial rights of a party...."[8]

 There is no evidence in the record that Flag Drilling ever challenged the alleged "arbitrary and speculative" nature of the Revenue Cabinet's figures. Although Erco did state in its answer to the Revenue Cabinet's cross-claim that it believed the amounts lacked specificity, this response had no effect upon Flag Drilling. Nor was there an argument raised before the trial court that Flag Drilling's fees should be paid out of the surplus amount awarded to Erco. Since Flag Drilling failed to preserve these issues, we may only review for palpable error.

 There is no indication that Flag Drilling's rights were affected by the trial court's award to the Revenue Cabinet. In fact, we fail to see how Flag Drilling has any standing to argue against the judgment obtained by the Revenue Cabinet. As the United States Supreme Court stated in *Warth v. Seldin*, "[i]n its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Article III."[9] Flag Drilling has not established a "case or controversy" between itself and the Revenue Cabinet. The amount of money recovered by the Revenue Cabinet had absolutely no effect upon the amount of recovery received by Flag Drilling. Flag Drilling received the entirety of the $784.97 it was due, plus additional court costs. The judgment in favor of the Revenue Cabinet did not preclude Flag Drilling

from full recovery, nor were its interests negatively affected by the Revenue Cabinet's receipt of Erco's delinquent taxes. Therefore, since Flag Drilling lacks standing, we decline to disturb the trial court's determination of this matter.

With regard to Flag Drilling's claim that attorney's fees should be paid solely out of Erco's surplus funds, we believe this matter is better left for a determination by the trial court on remand. Since it is within the trial court's discretion to determine how the funds collected from the sale of the property are to be distributed, we decline to address how Flag Drilling's fees should be disbursed.

### CONSTITUTIONALITY OF THE 12 PERCENT PER ANNUM INTEREST

 Finally, Flag Drilling asks us to determine whether the provisions of KRS 426.705 that require an individual purchaser of property to pay interest at 12 percent per annum from the date of purchase until the deed is transferred violates sections 2, 3, 27, and 28 of the Kentucky Constitution and conflicts with CR 53.

 Once again, Flag Drilling failed to preserve this issue in the trial court. We also question whether Flag Drilling has standing to challenge this statute. The brief filed on behalf of Flag Drilling does not mention how the company has suffered or will suffer an injury based on the alleged unconstitutional application of KRS 426.705. While the record reflects that Kelly Williams bought the property at the judicial sale, the record does not disclose whether Williams then transferred the property to Flag Drilling. Since Williams,

---

7. *Combs v. Knott County Fiscal Court*, 283 Ky. 456, 141 S.W.2d 859, 860 (1940).

8. CR 61.02.

9. 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

in his individual capacity as the purchaser of the Erco property, is not a party to this action, we fail to see how Flag Drilling, in its corporate capacity, has standing to argue the unconstitutionality of the 12 percent per annum interest.

Because Flag Drilling lacks standing, our discussion of this issue would be tantamount to issuing an advisory opinion; and since this Court does not render purely advisory opinions,[10] we again decline to disturb the trial court's decision.

## DISPOSITION

For the reasons given in this opinion, we reverse the Christian Circuit Court's order on its refusal to allow a reasonable attorney's fee to Flag Drilling for the foreclosure of the liens associated with the delinquency certificates it owned. Accordingly, this matter is remanded to the circuit court for it to determine the amount of a fee to be awarded to Flag Drilling for prosecuting its claim on its delinquency certificates. Because the other arguments raised by Flag Drilling were not properly preserved for appellate review, we affirm the trial court in all other respects.

ALL CONCUR.

---

**10.** *Kentucky High School Athletic Ass'n v.* *Davis,* 77 S.W.3d 596, 599 (Ky.App.2002).