**U.S. BANK NATIONAL ASSOCIATION, as Successor in Interest to Wachovia Custodian for Sass Muni V DTR, Appellant,**

v.

**TAX EASE LIEN INVESTMENTS 1, LLC; ABC Finance Company; City of Princeton, Kentucky; Caldwell County, Kentucky; Tommy G. Atwood, Jr.; Edna Atwood; and Pennyrile Housing Corporation, Appellees.**

No. 2011–CA–000472–MR.

Court of Appeals of Kentucky.

Nov. 18, 2011.

M. Jake Bliss, Lexington, KY, for appellant.

James S. Miller, Princeton, KY, for appellee Caldwell County, Kentucky.

No briefs filed for other appellees.

Before MOORE, STUMBO and WINE, Judges.

*OPINION*

STUMBO, Judge:

U.S. Bank National Association appeals from an Order of the Caldwell Circuit Court approving a Master Commissioner's recommended dispersal of funds from the sale of a parcel of real property. U.S. Bank argues that the trial court improperly gave priority to the City of Princeton and Caldwell County rather than ordering a *pro rata* dispersal to all lien holders. Having concluded that Kentucky Revised Statutes (KRS) Chapter 134 gives equal priority to liens held by municipalities and third-party purchasers of those liens, we must reverse and remand the Order on appeal.

The facts are not in controversy. The City of Princeton and Caldwell County, Kentucky assessed *ad valorem* taxes on a parcel of real property situated in Princeton, Kentucky. Beginning in 2001, the owner of the parcel failed to pay the taxes resulting in the issuance of certificates of delinquency for each calendar year that the taxes went unpaid.

Pursuant to statute, Tax Ease Lien Investments 1, LLC purchased the certificates of delinquency for the calendar years 2001, 2004, and 2006. U.S. Bank purchased the certificate for 2005 and the remaining certificates continued to be held by the City of Princeton and Caldwell County.

In 2009, Tax Ease filed a civil action pursuant to statute in Caldwell Circuit Court to collect its tax liens. It named U.S. Bank as a defendant by virtue of its interest in the parcel. On July 10, 2010, the circuit court rendered a Default Judgment, Summary Judgment and Order of Sale to satisfy the various liens. Pursuant to an Order of the Master Commissioner, the parcel was sold on September 20, 2009. The proceeds of the sale, in the amount of $5,500, were not sufficient to fully pay each of the outstanding liens for the delinquent *ad valorem* taxes owed to the City of Princeton, Caldwell County, Tax Ease, U.S. Bank and third party purchaser Southern Tax Services, LLC.

On October 22, 2010, the circuit court rendered an Order distributing the proceeds of the sale in full satisfaction of the certificates of delinquency. Pursuant to the Master Commissioner's proposed distribution, which was adopted by the trial court, the City of Princeton and Caldwell County received $635.60 and $506.14, respectively, representing the full amounts of their liens. The balance, after expenses, was divided *pro rata* between Tax Ease, U.S. Bank, and Southern Tax Services. Tax Ease and U.S. Bank each moved to amend the Order, arguing that the City of Princeton and Caldwell County should not be given priority; *i.e.,* that all parties—including the City of Princeton and Caldwell County—should receive a *pro rata* share of the proceeds. The motions were denied. As a basis for the denial, the circuit court opined that "[i]n balancing the equities in this case, the Court believes that the distribution proposed by the Master Commissioner is appropriate." This appeal followed.

U.S. Bank now argues that the circuit court erred in distributing to the City of Princeton and Caldwell County the full amounts of their liens, and then dividing the remaining proceeds *pro rata* among the other parties. U.S. Bank contends that KRS Chapter 134 provides no basis for concluding that the liens held by third-party purchasers are inferior to those held by municipalities. Rather, it maintains that the statutory scheme provides that all liens resulting from unpaid *ad valorem* taxes are of equal priority, irrespective of whether they are held by the originating municipality or third-party purchasers. U.S. Bank directs our attention to KRS 134.420(3), which provides that liens resulting from *ad valorem* taxes "shall have priority over any other obligation or liability for which the property is liable." It argues that this provision makes no distinction between liens held by municipalities and third-party purchasers, and if the Legislature had intended to make such a distinction, it would have written as much into the law. U.S. Bank also points to *Flag Drilling Company, Inc. v. Erco, Inc.,* 156 S.W.3d 762 (Ky.App.2005), and KRS 426.690, the latter of which it argues provides that liens of equal rank are entitled to *pro rata* satisfaction. In sum, U.S. Bank maintains that its lien resulting from the purchase of the 2005 certificate of delinquency is not statutorily inferior to those liens held by the City of Princeton and Caldwell County, and that the circuit court erred in failing to so rule.

Having closely examined the record, the written arguments and the law, we are persuaded that the statutory scheme gives priority to liens resulting from unpaid *ad valorem* taxes irrespective of whether they are held by municipalities or third parties. KRS 134.420(1) provides that, "[t]he state and each county, city, or other taxing district shall have a lien on the property assessed for taxes due them respectively for eleven (11) years following the date when the taxes become delinquent." According to section (3), "[t]he lien . . . shall

have priority over any other obligation or liability for which the property is liable."

KRS 134.128 provides for the sale of certificates of delinquency to third parties. The question for our consideration is whether liens held by third-party purchasers of certificates of delinquency are entitled to priority in the same manner as liens held by municipalities. We must answer that question in the affirmative. In establishing liens resulting from *ad valorem* taxes, it is noteworthy that the statutory language grants priority to the *lien* and not the lien holder. That is to say, KRS 134.420(3) expressly provides that liens resulting from unpaid *ad valorem* taxes have priority over all other obligations for which the property is liable.

May this priority be exercised by subsequent third-party purchasers of the indebtedness? The statutory language leads us to the conclusion that it may. KRS 134.546(2) states that "[a] third-party purchaser may ... (b) [i]nstitute an action to enforce the lien provided in KRS 134.420, represented by the certificate of delinquency and those certificates subsequently held by the same third-party purchaser against the same delinquent or property[.]" Thus, according to the statutory language, the municipality's lien resulting from unpaid *ad valorem* taxes and a third-party's lien resulting from the purchase of a certificate of delinquency are one and the same. KRS 134.420 establishes without ambiguity that a lien for unpaid *ad valorem* taxes has priority, and KRS 134.546(2) grants to third-party purchasers the right to enforce that lien. From this we conclude that the priority of third-party *ad valorem* liens is not inferior to that of municipal *ad valorem* liens. The liens are one and the same.

KRS 134.546(5) bolsters this conclusion. In this provision, the Legislature determined that where there is no purchaser at a foreclosure sale, "the master commissioner shall make a deed to the person or persons shown by record to be the owner of the certificate or certificates of delinquency, and that person or persons shall have a pro rata interest in accordance with the amount of their respective certificates." Thus, when there are no proceeds to disperse, all lien holders—be they municipal or third party—receive a *pro rata* interest in the parcel.

And finally, a panel of this Court has previously equated the status of third parties and municipalities on the issue of *ad valorem* lien enforcement. In *Flag Drilling, supra,* the panel stated that,

> We believe that by giving a private purchaser of a delinquent tax claim a means to enforce the lien, *KRS 134.490(2)(b) allows that purchaser to stand in the shoes of the state, county, city, or taxing district in whose name the lien has been imposed.* By doing so, the statute gives the private owner of a certificate of delinquency a feasible means of recovering its tax claims. (Emphasis added).

*Flag Drilling,* 156 S.W.3d at 767.

Though *Flag Drilling* centered on attorney fees, by noting that third-party purchasers "stand in the shoes of the state, county, city, or taxing district in whose name the lien has been imposed[,]" it edifies the conclusion that liens resulting from the non-payment of *ad valorem* taxes do not lose superiority by virtue of the underlying certificates of delinquency having been sold to third parties.

KRS Chapter 134 and the supportive case law lead us to conclude that liens resulting from the non-payment of *ad valorem* taxes are not rendered inferior by the sale of certificates of delinquency from municipalities to third-party purchasers. Accordingly, we reverse the Order of the Caldwell Circuit Court and remand the

matter for entry of a *pro rata* distribution of the proceeds.

ALL CONCUR.