RENDERED: OCTOBER 23, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0336-DG

KEITH SMITH AND JESSICA SMITH                                APPELLANTS


|                              | ON REVIEW FROM COURT OF APPEALS |
| V. | NO. 2022-CA-1495 |
|    | CLAY CIRCUIT COURT NO. 18-CI-00173 |


APEX FUND SERVICES, AS CUSTODIAN                              APPELLEES
FOR CERES TAX RECEIVABLES, LLC; AND
COMMONWEALTH OF KENTUCKY – CLAY
COUNTY


**OPINION OF THE COURT BY JUSTICE THOMPSON**

**<u>AFFIRMING</u>**

At a master commissioner's property auction, a parcel of real property located on North Highway 421 in Manchester, Kentucky (the property), sold for $2,500. The question before us is how the proceeds of this sale should be divided between the parties.

The parties (Keith and Jessica Smith (the Smiths), Apex Fund Services as Custodian for Ceres Tax Receivables (Apex), and the Commonwealth of Kentucky - Clay County (Clay County)) each own certificates of delinquency for unpaid property taxes against the property (tax liens). The Court of Appeals determined that the holders of the tax liens should each be given a *pro rata* share of the sales proceeds. Keith and Jessica Smith appeal, arguing they should receive priority on their certificate of delinquency under the doctrine of

"first in time, first in right" (also known as "race notice") as they own the earliest tax lien and recorded their lien first. The Smiths also purchased the property at the master commissioner's sale. They seek a credit against the amount they owe for the purchase based on the amount owed to them for their certificate of delinquency plus associated statutory costs and attorney fees.

Given the inadequate purchase price (reflecting the degraded value of the property) and the requirement that the costs of the sale be satisfied first, such a decision in favor of the Smiths would mean that despite Apex initiating the foreclosure action and being entitled to thousands of dollars given the costs of the litigation and attorney fees, Apex would likely take nothing. Clay County would similarly receive no payment for the remaining outstanding overdue taxes.

## I. FACTUAL AND LEGAL BACKGROUND

After the property owners died, no one paid *ad valorem* taxes to the county on the property. Clay County sold two certificates of delinquency for the overdue taxes owed on the property, for tax years 2011 and 2012, pursuant to Kentucky Revised Statutes (KRS) 134.128 which provides for the sale of certificates of delinquency to third parties. Clay County retained the other certificates of delinquency for all subsequent tax years.

On April 16, 2012, the 2011 tax lien was sold to Mid South Capital Partners LP (Mid South) for $432.58. At that time, the property had an assessed value of $25,700. On July 9, 2013, Mid South assigned this certificate

2

of delinquency to the Smiths. On July 12, 2013, the Smiths recorded this tax lien.

On April 15, 2013, the 2012 tax lien was sold to Apex for $467.21. On October 16, 2013, Apex recorded this tax lien.

Pursuant to KRS 134.490, third-party purchasers are entitled to initiate suit to collect on their certificates of delinquency. On July 7, 2018, Apex filed suit in Clay County Circuit Court to foreclose on its now five-year-old tax lien on the property. Apex named as defendants the heirs, known and unknown, of the deceased property owners, as well as the other lien holders, the Smiths and Clay County, as required by KRS 426.690. Apex sought a judgment to be satisfied by the sale of the property.[1]

The Smiths answered and filed a cross-claim, requesting that their 2011 tax lien be adjudged "first, prior, and superior to all other liens" and the property be sold to satisfy what they were owed.[2]

The potential heirs that were able to be served by the warning order attorney disclaimed any interest in the property. Other parties were subsequently named who also disclaimed any interest in the property. No other parties appeared in the litigation.

---

[1] This included the amount of the tax lien, an administrative fee of $115.00, plus Apex's costs, and interest at the rate of 12% per annum. Apex also sought to be awarded costs and fees incurred from the suit, including a reasonable attorney fee as authorized by KRS 134.452.

[2] The Smiths similarly sought costs, interest, and attorney fees.

3

On May 17, 2022, Apex filed a motion for summary judgment requesting an *in rem* judgment and order of sale. Apex also filed a bill of costs and its attorney's affidavit of costs and fees.[3]

The Smiths responded and reiterated their argument that their lien was first and superior to Apex's lien, and, therefore, they should receive first priority for any proceeds of any order of sale.

On October 6, 2022, an *in rem* judgment and order of sale was entered. The circuit court granted Apex a judgment of $7,194.26 plus interest at 12%, secured by a lien on the property "which lien is adjudged to be prior and superior to any and all of the liens and encumbrances held by the parties hereto except any lien for city, county, and state ad valorem taxes due and owing in this action."

The circuit court ordered that the property be sold at auction by the master commissioner with the purchaser to take the properly free and clear from the claims of the parties to the action. The judgment stated that "[i]n lieu of payment, the Plaintiff (or Cross-Plaintiff, as the case may be) may make a credit bid up to the amount awarded to it in the judgment." The judgment also specified that the proceeds of the sale would be applied first to the costs of this action[4] and *next* to:

---

[3] Apex's costs were $1,936.73 and included two sizeable court ordered payments to the warning order attorney in the amounts of $629.32 and $457.78. Apex's prelitigation attorney fees were $373.77 and its litigation attorney fees were $3,825.00.

[4] Meaning the costs of the sale as provided for pursuant to the Kentucky Rules of Administrative Procedure, AP Part IV, Master Commissioners of the Circuit Court,

> The full satisfaction of Plaintiff's lien as adjudicated herein, including reimbursement for its costs, expenses and attorney's fees as set forth herein, and any State, County and/or City ad valorem real estate taxes due and owing on sale date including the claims of other third party purchasers . . . whose claims are adjudged to be of equal dignity and priority[.]

On October 12, 2022, the Smiths filed a motion to alter, amend, or vacate which requested that the circuit court find that their lien "is the first, prior and superior lien[.]" Apex responded, stating that the Smiths and Apex had equal priority as third-party purchasers of certificates of property tax delinquency and where the proceeds of the sale are insufficient to pay all tax lien claims, they should be paid on a *pro-rata* basis according to their amounts due. The Smiths replied and argued that while all tax liens have equal rank, within such rank they should have priority because their lien was "first in time first in right."

The master commissioner scheduled the property auction, and the property was appraised at $1,000. At the auction, held on December 2, 2022, the Smiths bought the property for $2,500. On December 6, 2022, the master commissioner filed his cost of sale, which totaled $1,287.

On December 14, 2022, the circuit court granted the Smiths' motion to alter, amend, or vacate. The circuit court found that the Smiths' tax lien was first in time since it was recorded first. The circuit court concluded that although the two tax liens are "of equal rank" per KRS 134.420(4), the priority

---

which state the fees for judicial sales and necessary direct expenses, as enacted pursuant to the authorization provided in KRS 31A.010.

5

of those liens was still determined under the principle of "first in time, first in right." The circuit court also distinguished KRS 134.546(5), which provided the "pro rata" division language, as only applying if there was no purchaser of the property. Therefore, the circuit court determined because the Smiths purchased the property, they should be given a credit toward the purchase price.

Apex appealed and named Clay County as an appellee as it could have an interest in the property or the proceeds of the master commissioner sale.

The Court of Appeals reversed, determining that the circuit court erred in giving the Smiths priority. Relying on past Court of Appeals' precedent, it interpreted KRS 134.420 as meaning that all tax liens are equal in priority, and so, all holders of tax liens should receive a *pro rata* share of the proceeds of the Master Commissioner sale.

We accepted discretionary review and granted oral argument.

## II. ANALYSIS

The Smiths argue they are entitled to the proceeds of the master commissioner's sale pursuant to possessing a "first in time, first in right" certificate of delinquency. Apex argues that since tax liens are of the same equal class, distribution should occur on a *pro rata* basis among all the tax lienholders, both the third-party purchasers of certificates of delinquency and Clay County. Clay County has not taken any position between the Smiths and

6

Apex. It asserts that "it is entitled to enforce and collect its taxes for the years 2013, 2015, 2016, 2017, 2018, and any subsequent years, per KRS 134.120."[5]

Regarding the Smiths' argument, "[t]his Court has long held that that the first creditor to file its lien enjoys the first right to the debtor's property. This general rule of lien preference has become known as 'first in time, first in right.'" *Wells Fargo Bank, Minnesota, N.A. v. Commonwealth, Finance and Admin., Dept. of Revenue*, 345 S.W.3d 800, 804 (Ky. 2011) (quoting *Truck Corp. of Ky. v. Hurry Up Broadway Co.,* 222 Ky. 521, 1 S.W.2d 990 (1928)).

Alternatively, it may correctly be stated that "Kentucky is a race-notice jurisdiction. *See* KRS 382.270–.280." *Mortgage Electronic Registration Systems, Inc. v. Roberts*, 366 S.W.3d 405, 407 (Ky. 2012). This means that "a prior interest in real property takes priority over a subsequent interest that was taken with notice, actual or constructive, of the prior interest." *Id.* at 408.

As to the statutory provisions that establish Kentucky is a race-notice jurisdiction, KRS 382.270(1) states in relevant part:

> Except as otherwise provided in KRS 382.285 [giving a purchase money deed of trust or mortgage priority over a prior lien], no deed or deed of trust or mortgage conveying a legal or equitable title to real property shall be lodged for record and, thus, valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law.

Additionally, KRS 382.280 states:

> Except as otherwise provided in KRS 382.077 [regarding the potential for immediate in-person recording but specifying that "[a]ll documents received on a given date shall have equal priority"]

---

[5] Clay County has not specified what it is owed in taxes for these tax years.

7

and 382.285, all bona fide deeds of trust or mortgages shall take effect in the order that they are legally acknowledged or proved and lodged for record.

As stated in *Wells Fargo Bank, Minnesota, N.A.*, 345 S.W.3d at 804, "[i]t is without question, however, that the Kentucky General Assembly is empowered to create statutory liens and establish their priorities;[6] but, absent a statute giving precedence to a statutory lien, its rank is determined under the principle of first in time, first in right." *See Midland–Guardian Co. v. McElroy,* 563 S.W.2d 752, 754 (Ky. App. 1978).

The resolution of this appeal is purely a matter of statutory analysis which rests upon the interpretation of three key statutory provisions: KRS 134.420(4), KRS 134.546(5), and KRS 426.690. We must determine whether these statutes exempt tax liens from the common law rule of "first in time, first in right" priority within the category of tax liens, which are entitled to priority over other categories of liens.

KRS 134.420 establishes that the state and each county, city, or taxing district shall have a lien on the property assessed for taxes, including all expenses. KRS 134.420(3) defines that such a lien includes "all interest, penalties, fees, commissions, charges, costs, attorney fees, and other expenses as provided by this chapter that have been incurred by reason of delinquency in payment of the tax claim certificate of delinquency, personal property

---

[6] An example of another type of statutory lien given precedence is contained in KRS 376.010(2), which provides priority to mechanics' and materialman's liens as explained in *Tile House, Inc. v. Cumberland Federal Sav. Bank*, 942 S.W.2d 904, 906 (Ky. 1997).

certificate of delinquency, or in the process of collecting any of them[.]" KRS 134.420(3) further states such a lien "shall have priority over any other obligation or liability for which the property is liable."

As to what prelitigation and actual litigation costs a third-party purchaser of a certificate of delinquency can collect pursuant to KRS 134.420(3), these are clarified in KRS 134.452(1) and (3). Prelitigation fees include the actual amount paid for the certificate of delinquency, interest, and prelitigation attorney fees. KRS 134.452(1). Actual litigation costs include reasonable attorney fees and costs. KRS 134.452(3).

Importantly, KRS 134.420(4) provides: "The lien of any city, county, or other taxing district **shall be of equal rank** with that of the state." (Emphasis added).

KRS 134.546 explains that third party purchasers of certificates of delinquency may institute actions to collect the debt or enforce the lien. KRS 134.546 works in conjunction with KRS 426.690, which requires that all lienholders be named in any action to enforce a lien against real property.

KRS 426.690 states in relevant part:

> [W]hen it appears from the petition or otherwise, that several debts are secured by one (1) lien, or **by liens of equal rank**, and they are all due at the commencement of the action, or become so before judgment, **the court shall order the sale for the pro rata satisfaction of all of them**[.]

(Emphasis added). This provision is virtually identical to the one found in the old civil code.[7]

KRS 134.546(5) states:

> If property is sold pursuant to a judgment of foreclosure, it shall be appraised pursuant to the provisions of KRS 426.520, and there shall be a right of redemption as provided in KRS 426.530. **If there is no purchaser at a foreclosure sale**, the master commissioner shall make a deed to the person or persons shown by record to be the owner of the certificate or certificates of delinquency, and that person or persons shall have a **pro rata** interest in accordance with the amount of their respective certificates.

(Emphasis added).

Cases from the Court of Appeals specify that *pro rata* distribution is appropriate to satisfy tax liens. However, these cases are not definitive as they are factually distinct because the issue of whether a *pro rata* distribution was appropriate to resolve tax liens—where there was not enough money to pay them in whole—was never squarely before the Court.

In *U.S. Bank Nat. Ass'n v. Tax Ease Lien Investments 1, LLC,* 356 S.W.3d 770, 771 (Ky. App. 2011), the trial court ordered proceeds from a sale of the property distributed to a city and county first, based on their status as taxing bodies. Their certificates of delinquency were not first in time. Then the trial court divided the remaining funds *pro rata* between the two third-party purchasers of the remaining certificates of delinquency.

---

[7] *See Leopold v. Furber*, 84 Ky. 214, 1 S.W. 404, 405 (1886) (reciting that subsection 3 of section 694 of the Civil Code provides that "when it appears from the petition or otherwise that several debts are secured by one lien, or **by liens of equal rank**, and they are all due at the commencement of the action, or become so before the judgment, **the court shall order the sale for a pro rata satisfaction of them**") (emphasis added).

10

The party holding the earliest certificate of delinquency did not appeal. Instead, the other holder of a certificate of delinquency did, raising the argument that it should have received a *pro rata* distribution alongside the taxing bodies and the other holders of certificates of delinquency, as the taxing bodies had no entitlement to be paid first pursuant to KRS 134.420(4).

The Court of Appeals held that "the priority of third-party *ad valorem* liens is not inferior to that of municipal *ad valorem* liens. The liens are one and the same." *U.S. Bank Nat. Ass'n*, 356 S.W.3d at 772. However, whether a *pro rata* distribution was generally appropriate for tax liens rather than a "first in time, first in right" distribution among the tax lien holders, was not directly examined, nor was there a reason for it to be when that issue was not raised, likely because the appellant did not hold the lien for the oldest tax year and neither did the taxing bodies.[8]

Similarly, in *KLAS Properties, LLC v. Tax Ease Lien Investments 1, LLC*, 407 S.W.3d 564, 566 (Ky. App. 2013), the issue of priority among tax lien holders was not directly addressed as the only question before the Court was whether Tax Ease had a right to collect its costs *before* receiving a *pro rata* distribution.[9] The Court concluded that because "all tax liens are equal in

---

[8] In *U.S. Bank Nat. Ass'n,* the appellant was U.S. Bank, which purchased a 2005 certificate of delinquency, while Tax Ease held certificates of delinquency for the years 2001, 2004, and 2006, and the remaining certificates were held by the city and county (apparently for the years 2003, and years 2007 and later, although the opinion did not clarify this detail). *Id.* at 770.

[9] In *KLAS Properties, LLC*, the appellant KLAS purchased a certificate of delinquency for tax year 2007. Tax Ease purchased certificates of delinquency for tax

priority" the third-party purchaser who initiates the foreclosure action is entitled to its costs as included within the lien itself, and "[i]n the event that the proceeds are insufficient to pay all tax liens, as occurred herein, that purchaser is only entitled to a pro rata share of its lien, including the costs associated therewith." *Id.* at 568.

Other Kentucky cases have also assumed that a *pro rata* distribution is appropriate among tax lienholders. *See Kentucky Tax Bill Servicing, Inc. v. Fultz*, 567 S.W.3d 148, 153 (Ky. App. 2018) (assuming that a *pro rata* distribution on tax liens was correct and concluding the trial court acted properly within its discretion in declining to award post-judgment interest as "[awarding] post-judgment interest would only serve to decrease the pro rata shares of the remaining lienholders"); *U.S. Nat. Bank Ass'n v. American General Home Equity, Inc.*, 387 S.W.3d 345, 349 (Ky. App. 2012) (ordering a *pro rata* distribution among tax lienholders, but limiting the pool from which the non-appealing lienholders could take as they did not challenge the mortgage lienholder's right to only pay for the property the amount owed above its claimed interest).

*Pro rata* distributions within certain classes also have a long history outside of the tax lien context. For example, regarding perfected mechanic's liens, materialmen and laborers "share equally" when working on the same project, rather than receiving "rank[ed] priority from the date that each either

---

years 2005, 2006, and 2008. The certificates for tax years 2009 and 2010 remained with Logan County. *Id.* at 565.

began work or furnished materials." *Charles White Co., Inv. v. Percy Galbreath & Sons, Inc.,* 563 S.W.2d 478, 482 (Ky. App. 1978). Similarly, maritime law recognizes that lienholders of the same rank are entitled to a *pro rata* distribution. *See Central Boat Rentals, Incorporated v. M/V Nor Goliath,* 31 F.4th 320, 325 (5th Cir. 2022); *Saylor v. Taylor,* 77 F. 476, 479-80 (4th Cir. 1896).

The Smiths argue that being of "equal rank" merely means within the category of tax liens that taxes owed to the state do not take priority over tax liens which were sold to third parties. They also argue that because they purchased the property, KRS 134.546(5) is simply inapplicable. In reaching such a conclusion, the Smiths have overlooked the effect of KRS 426.690 on the interpretation to be given to KRS 134.420(4).

KRS 134.420(4) specifies that tax liens are of "equal rank" and the Court of Appeals has interpreted this as meaning that the state does not have priority over third party purchasers of certificates of delinquency. KRS 426.690 requires that a foreclosure of property to satisfy "liens of equal rank" requires a sale of the property for "the pro rata satisfaction of them all." KRS 134.546(5) does not change this requirement. It only specifies what shall occur if there is no purchaser at a foreclosure sale. In that event, rather than the owners of liens of equal rank (here the parties possessing certificates of delinquency for various tax years) receiving a *pro rata* payout from the proceeds of the master commissioner's sale, they become owners of the property according to their *pro rata* interest.

We cannot fathom any logical distinction for why a *pro rata* division among tax lienholders is appropriate where property has not been sold at a master commissioner's auction, but a *pro rata* distribution among tax lienholders would be inappropriate where the property has been sold. In fact, we find it enlightening that the legislature determined that ownership would be pro-rated if the property does not sell. In either circumstance, the tax lienholders' interest is the same and it is only the format their interest takes that is different. Treating the parties' interests to a *pro rata* distribution of the proceeds from the sale is logical and seamlessly harmonizes KRS 426.690 and KRS 134.546(5).

Therefore, within the class of *ad valorem* tax lienholders, which consists of the state, the county, the city, and the third-party purchasers of certificates of delinquency, we hold that the relevant statutes provide for an exception to the common law rule of "first in time, first in right" because each of these parties' interest is classified as being of equal rank. That means that in this lawsuit the holders of certificates of delinquency, Apex and the Smiths, along with the county, are each entitled to a *pro rata* distribution of the proceeds of the sale of the property according to what they can establish constitutes their liens in accordance with KRS 134.420(3) and KRS 134.452.

Other categories of lienholders continue to be governed by the common law rule of "first in time, first in right" as codified by our statutes and will be given priority (after any priority statutory classes whose liens must be satisfied first, here the tax lienholders) according to the ordinary race-notice rule.

14

### III. CONCLUSION

We affirm as we conclude that the Court of Appeals reached the correct result and properly reversed the Clay Circuit Court. The General Assembly through its statutory enactments exempted tax liens from being subject to the common law rule of "first in time, first in right" and instead mandated a *pro rata* distribution if the proceeds from the master commissioner's sale are insufficient to pay the tax liens and associated costs. On remand, the circuit court will require all the parties to submit proof as to how much they are owed under their liens, and then the circuit court will make an appropriate *pro rata* division of the proceeds of the property sale.

Lambert, C.J.; Bisig, Conley, Keller, Nickell, and Thompson, JJ., sitting. Bisig, Conley, Keller, Nickell, and Thompson, JJ., concur. Lambert, C.J., dissents without separate opinion. Goodwine, J., not sitting.

COUNSEL FOR APPELLANTS:

Stella B. House

COUNSEL FOR APPELLEE, APEX FUND SERVICES, AS CUSTODIAN FOR CERES TAX RECEIVABLES, LLC:

John M. Lally
Lally Law Office PLLC


COUNSEL FOR APPELLEE, COMMONWEALTH OF KENTUCKY – CLAY COUNTY:

Mariah J. Aubrey
Clay M. Bishop
Clay County Attorney's Office