CITY OF BOWLING GREEN, Kentucky,
etc., Appellant,

v.

BOARD OF EDUCATION OF BOWLING
GREEN INDEPENDENT SCHOOL
DISTRICT, etc., Appellee.

Court of Appeals of Kentucky.

June 27, 1969.

**244**

Leland H. Logan, Bowling Green, for appellant.

Marshall Funk, Bowling Green, Cornelius W. Grafton, Grafton, Ferguson, Fleischer & Harper, Louisville, for appellee.

MONTGOMERY, Justice.

This is an agreed case submitted under authority of KRS 418.020. The action was instituted by the Board of Education of Bowling Green Independent School District against the City of Bowling Green, hereinafter referred to as "Board" and "City," respectively.

Two questions are presented:

"Question No. 1: May the City of Bowling Green, Kentucky, accept from the Board of the District a conveyance of the high school site under authority of KRS 162.120, and an offer to lease back the site, as improved by the construction of the desired high school building and appurtenant facilities thereon under authority of KRS 162.140; thereupon providing for the financing of construction of the new high school building and appurtenant facilities by authorizing and offering at public sale the City's $4,000,000 'Public School Project Revenue Bonds, Series of June 1, 1969,' under authority of KRS 58.010 to 58.120, inclusive?"

"Question No. 2: If it is the judgment of the Court that the above Question No. 1 is answered in the affirmative, then in the City's public offering of its $4,-000,000 'Public School Project Revenue Bonds, Series of June 1, 1969,' will the applicable interest rate limitation be 7% per annum as provided in Chapter 154 of the Acts of 1968, or 6½% per annum as provided in Chapter 110 of the Acts of 1968?"

The circuit court answered Question No. 1 in the affirmative and Question No. 2 by holding 7% per annum to be the applicable interest rate limitation. We agree.

The Board desires to build a new high school building. It has sought to finance such project under the provisions of KRS 162.120 and 162.140 by conveyance to the City with a lease-back agreement. The offer to sell bonds with which to finance the project received no acceptors. The 6% per annum interest rate limitation prescribed by KRS 162.180 is shown to be the reason for the failure to receive bids. The currently prevailing interest rates applicable to comparable bonds on a statewide and nationwide basis were and are substantially higher than the 6% limit prescribed by KRS 162.180, and necessarily prescribed by the City in its published advertisements soliciting purchase bids. Meanwhile the City, acting on behalf of the Board, has received and accepted an appropriately authorized bid from a contractor to construct the proposed building, which construction bid has been extended to August 1, 1969. The contractor is not willing to extend its bid for any greater period of time by reason of inflationary pressures affecting the cost of labor and materials.

Accordingly, Question No. 1 asked if the financing may be done by combining the authority under KRS 162.120 and 162.140 with KRS 58.010 to 58.120, inclusive. By a 1968 amendment, KRS Chapter 58 provides a more favorable interest rate.

KRS Chapter 58, entitled "Acquisition and Development of Public Projects by Governmental Units and Agencies, through Revenue Bonds," was enacted in 1946 and

amended in 1958. As amended in 1958, KRS 58.010 provides:

"Definitions.

"As used in KRS 58.010 to 58.140, unless the context requires otherwise:

"(1) 'Public Project' means any lands, buildings, or structures, works or facilities suitable for and intended for use as public poperty for public purposes or suitable for and intended for use in the promotion of the public health, public welfare or the conservation of natural resources, including the planning of any such lands, buildings, structures, works or facilities, and shall also include existing lands, buildings, structures, works and facilities, as well as improvements or additions to any such lands, buildings, structures, works or facilities.

"(2) 'Public Project' as defined herein shall include projects intended for use as public property for public purposes by another governmental agency, including the United States Government, other than the governmental agency acquiring the land or constructing the building, structure or facility.

"(3) 'Governmental Agency' means the Commonwealth of Kentucky as such acting by or through any department, instrumentality or agency thereof, or any county, city, agency or instrumentality or other political subdivision of the Commonwealth, or agency, or instrumentality thereof."

Subsection (2), further defining "public project," was inserted by the 1958 amendment. Obviously this amendment was intended to include "projects intended for use as public property for public purposes by another governmental agency, * * *, other than the governmental agency acquiring the land or constructing the building, structure or facility."

Subsection (3), formerly subsection (2), is an extremely broad definition of "governmental agency." It is hard to envision any part of the government of the Commonwealth of Kentucky that would not come within the language of the definition.

■ Quite obviously the Bowling Green Independent School District, which has long existed under authority of KRS 160.-020, and is a body politic and corporate under KRS 160.160, is a governmental agency within the language of KRS 58.010(3). It is equally true that the City of Bowling Green, a municipal corporation of the second class, as shown by KRS 81.010(2), and vested with the general powers conferred on cities of the second class by KRS Chapter 84, is a governmental agency within the meaning of KRS 58.010(3). Further, the Board is a public corporation. 18 Am.Jur. 2d, Section 8, page 553. As such, it is within the meaning of KRS 58.030(3) and is authorized to enter into a lease or contract with another governmental agency.

■ The answer to whether the construction of a high school building is a public project within the language of KRS 58.010 would appear equally clear. Certainly it would be a public project constructed for a public purpose. Under KRS 150.610, "public shooting areas, water fowl or other wildlife refuges, public fishing lakes or the establishment of other projects of public benefit in the interest of fish and game" are public projects under the terms of KRS 58.010 through 58.140. Certainly if the General Assembly considered a project "in the interest of fish and game" as a public project it would undoubtedly be equally solicitous and would intend that the construction of a building for the education of young people should likewise be considered as a public project.

Other examples of a "public project" under KRS 58.010 are: a drainage project, a transportation system, a waterworks system, a garbage disposal plant, a natural gas system, and a steamboat as a recreational facility. Tierney v. Shamburger, Ky., 240 S.W.2d 836; Chrisman v. Cumberland Coach Lines, Ky., 249 S.W.2d 782; Burkholder v. City of Louisville, Ky., 276 S.W. 2d 29; Fayette County Fiscal Court v.

Fayette County, 314 Ky. 595, 236 S.W.2d 455; Boone v. Cook, Ky., 365 S.W.2d 100.

It, therefore, is concluded that the City and the Board are governmental agencies and that the building contemplated is a public project under KRS 58.010. A similar conclusion was reached in Hill v. City of Providence, 307 Ky. 537, 211 S.W.2d 846.

The City undertakes to distinguish Hill v. City of Providence because in that case the city issuing the bonds had an interest of its own. The city was to have the use of the building for certain proper purposes not conflicting with school uses for which it was to pay a sum annually from excess revenues of its utility systems. Such payments and pledge of revenue were authorized by KRS 58.130.

As against this contention of the City, the Board replies that its proposed plan of financing explicitly excludes any reference to KRS 58.130 so that the bond proceedings will contain no reference to any authority on the part of the City to use any of its revenue or resources for the payment of the bonds or the interest thereon. Nor is the City to have any use of the building.

■■ Further, there is no question of the right of the Board under KRS 162.120 to convey a school site to the City and under KRS 162.140 to lease back the site and improvements as herein provided. This is independent authority to convey and lease back and is not conditioned upon financing by the City in any particular manner. KRS 162.120 to 162.290 appear consecutively in the Kentucky Revised Statutes, but these provisions arose from two separate Acts—one including the substance of KRS 162.120, 162.130 and 162.140 (Chapter 68, Acts of 1934), and the other covering the substance of KRS 162.150 to 162.290 (Chapter 69, Acts of 1934). Each of these Acts contains a separate section declaring that it creates "an additional and alternate method" for achieving the purpose therein authorized. It is apparent that the two Acts were intended to be separate and that the authority to convey and lease back is not conditioned upon financing under any particular statutory authority.

There are other examples wherein public bodies have a free choice of proceeding under one set of financing statutes or another. For example, a city may finance a water system either under the provisions of KRS 58.010 et seq., or under the provisions of KRS 96.350 et seq. Similarly, a city may finance a sewer system under KRS 58.010 et seq., or under KRS 94.160, and there is a free choice between them.

■ It, therefore, is concluded that the point of distinction raised concerning Hill v. City of Providence is meritless and that the Board is authorized to act under KRS 162.120 and 162.140 in combination with financing by the City under KRS 58.010 to 58.120, inclusive. No question is raised concerning the right of the Board to proceed solely under Chapter 58, but the language of the sections quoted, taken with the language of KRS 58.020, 58.030(3), and 58.040, would seem to indicate that such financing is permissible. The latter question is not decided, however.

Question No. 2 concerns whether the annual interest rate limitation shall be 6½% or 7%. The conflict, if any, arises from the provisions of Chapter 110 of the 1968 Acts (Senate Bill 208) and Chapter 154 of the 1968 Acts (Senate Bill 125). Passage of both Acts was completed in the House of Representatives on March 15, 1968. Chapter 110 contained an emergency clause and became law on March 25, 1968. Chapter 154 became law without the signature of the Governor on March 27, 1968, but did not become effective until June 13, 1968. Both Acts contain an amendment to KRS 58.030. By Section 3 of Chapter 110, KRS 58.030(1) was amended so as to raise the interest-rate limitation from 6% to 6½%. No other change was made in KRS 58.030(1) by Chapter 110. By Section 2 of Chapter 154, KRS 58.030(1) was amended

so as to raise the interest-rate limitation from 6% to 7%.

The City argues that if two conflicting Acts are enacted by the same session of the General Assembly, the one containing an emergency clause prevails over the one that does not contain an emergency clause. Campbell County Election Commission v. Weber, 240 Ky. 373, 42 S.W.2d 511. This rule is recognized but is not deemed controlling.

 There are three established rules of statutory construction which take precedence over the rule which is urged on behalf of the City, and which, when considered together, are dispositive of the issue here presented. These rules are: (1) That it is the duty of the court to ascertain the purpose of the General Assembly, and to give effect to the legislative purpose if it can be ascertained; (2) that conflicting Acts should be considered together and harmonized, if possible, so as to give proper effect and meaning to each of them; and (3) that as between legislation of a broad and general nature on the one hand, and legislation dealing minutely with a specific matter on the other hand—the specific shall prevail over the general.

The first of these rules is stated in Kirkman v. Williams' Ex'r, 246 Ky. 481, 55 S.W.2d 365, wherein the court said:

"* * * Notwithstanding the apparent conflicts contained in the two acts, the purpose of the Legislature must be permitted to prevail. It is the duty of the court to construe the acts in the light of reason, and to avoid an interpretation that would lead to absurd results. Inconsistencies must be reconciled and incongruities removed. * * *."

The second of these rules has been declared so many times that quotation from the opinions appears to be unnecessary. It seems sufficient to make reference to Tubbs v. Commonwealth, 248 Ky. 24, 58 S.W.2d 236; State Budget Commission v. Adams, 249 Ky. 680, 61 S.W.2d 314; City of Pineville v. Meeks, 254 Ky. 167, 71 S.W.2d 33; and Sumpter v. Burchett, 304 Ky. 858, 202 S.W.2d 735.

The third rule is stated in Morton v. Auburndale Realty Company, Ky., 340 S.W.2d 445, wherein the court said:

"Where two statutes deal with common subject matter, the one dealing with the subject in a minute way will prevail over the general statute. This is especially true where the special act is later in point of time."

See cases cited therein.

 In applying these rules, it is necessary to examine the various 1968 Acts in relation to one another. Chapter 110 is general in its scope and evidences a concern on the part of the General Assembly that even then the trend of rising interest rates indicated some necessity for increasing rigid statutory bond-interest limitations. It specifically amended fifteen or more bond-authorizing statutes, and in each case increased the previous rate limitation from 6% to 6½%. However, it is noted that in Section 27 of that Act, it is stated "* * * this Act shall not be deemed to repeal any other statute specifying a limit in the maximum interest rate for any municipal bond, but shall be construed, except in the case of school districts, as permitting an alternate maximum rate if specified in the resolution or ordinance authorizing the bonds." Moreover, although broad and extensive in its scope, Chapter 110 of the 1968 Acts did not purport to be all inclusive; since, for example, it did not make reference to Industrial Building Revenue Bonds issued under KRS 103.200 et seq.—this subject being separately treated by Chapter 39 of the 1968 Acts, wherein the interest-rate limitation applicable to such bonds was increased from 6% to 7%. It thus appears that the purpose of Chapter 110 of the 1968 Acts was to afford general interest-rate relief on a broad scale but not on an exclusive basis.

On the other hand, Chapter 154 of the 1968 Acts is addressed solely to KRS 58.-

010, 58.030, 58.040, and 58.050. This Act is concerned with many details, and constitutes a thoughtful and minute set of amendments to these sections of Kentucky Revised Statutes. Included here was an amendment to KRS 58.030, increasing the interest-rate limitation from 6% to 7%, as in the case of Chapter 39 of the 1968 Acts which increased the interest-rate limitation applicable to Industrial Building Revenue Bonds in the same manner.

The court concludes as a matter of law that Chapter 154 of the 1968 Acts, being specific and detailed in nature, was intended to take precedence over the general provisions of Chapter 110 of the 1968 Acts. The two Acts are considered together, are harmonized so as to give reasonable effect to both, and are interpreted together in such manner as to represent what the court concludes to be the intention of the General Assembly as evidenced by the text of the Acts themselves. Having reached this conclusion, there is no occasion to resort to the lesser rule of construction which involves consideration of the presence or absence of an emergency clause. If the Acts themselves did not make the legislative intent apparent in such manner as to permit them to be construed harmoniously, each being given effect in a proper manner, the court might be obliged to resort to the emergency-clause rule; but such is not the case.

In the passage hereinabove quoted from Section 27 of Chapter 110 of the 1968 Acts, the court has observed the phrase "except in the case of school districts." In Sections 25, 26, and 27 of Chapter 110, the phrases "except a school district" and "except in case of school districts" appear. A similar reference is contained in the title to the Act. Inasmuch as Chapter 110 deals with the interest-rate limitation in various bond-authorizing statutes, the proper significance to be attached to the phrase "except a school district" is that the General Assembly intended to make clear that Chapter 110 made no change in school-financing statutes.

In conclusion, in view of the suggested conflicting legislation, it is not ours to reason why it was not combined in one Act but to decide by the language used in the Acts what was done by the General Assembly.

Judgment affirmed.

All concur.