KLAS PROPERTIES, LLC, Appellant

v.

TAX EASE LIEN INVESTMENTS 1, LLC; Ralph Morgan; The CIT Group/Consumer Finance, Inc.; and Logan County, Kentucky, Appellees.

No. 2011–CA–002319–MR.

Court of Appeals of Kentucky.

May 31, 2013.

Case Ordered Published by Court of Appeals Aug. 2, 2013.

Karen M. Kane–Roby, Bowling Green, KY, for appellant.

No Brief filed for Appellee.

Before CAPERTON, COMBS and DIXON, Judges.

*OPINION*

DIXON, Judge:

Appellant, KLAS Properties, LLC, appeals from the Logan Circuit Court's order of distribution that awarded Appellee Tax

Ease Lien Investments 1, LLC ("Tax Ease") costs prior to the pro rata distribution of other tax claims. For the reasons stated herein, we reverse and remand this matter to the trial court for further proceedings.

■ Both parties are third-party purchasers of certificates of delinquency for unpaid *ad valorem* taxes assessed against real property in Logan County. Tax Ease purchased certificates of delinquency for tax years 2005, 2006, and 2008. KLAS purchased a certificate of delinquency for tax year 2007. The certificates for tax years 2009 and 2010 remained with Logan County. On January 8, 2010, Tax Ease filed a foreclosure action in the Logan Circuit Court to enforce its tax liens pursuant to Kentucky Revised Statutes (KRS) 134.420. Tax Ease named KLAS as a defendant by virtue of its 2007 lien on the property. KLAS subsequently filed an answer, counterclaim and cross-claim asserting its interest in the subject property and requesting that its lien be paid from the proceeds of a judicial sale.

On December 1, 2010, the Logan Circuit Court entered a default judgment in rem, summary judgment in rem, and order of sale in favor of Tax Ease. On March 11, 2011, the subject property was sold for $5,500. Said amount was insufficient to pay all $7,625.30 in delinquent *ad valorem* taxes on the property. On April 27, 2011, an order of distribution was entered disbursing $728.97 to the Master Commissioners for fees and costs incurred in the sale of the property. The circuit court ordered the remaining $4,819.93 to be held by the Master Commissioner until further notice.

On August 17, 2011, a second order was entered directing the Master Commissioner to pay Tax Ease $501.04 for court costs associated with the foreclosure action. The remaining funds were to then be dis-tributed on a pro rata basis with Tax Ease receiving $2,837.51 (65.7%), KLAS receiving $902.65 (20.9%), and Logan County receiving $578.73 (13.4%). KLAS thereafter filed a motion to alter, amend or vacate the August 17th order, arguing that pursuant to KRS Chapter 134, Tax Ease was not entitled to court costs "off the top" prior to the pro rata distribution of the other tax claims. Tax Ease, in turn, claimed that KRS 91.517 and Kentucky Rules of Civil Procedure (CR) 54.04 authorized the award of costs prior to the division of the remaining monies.

Following a hearing, the circuit court ordered both parties to submit proposed orders within ten days for further review. Eventually, in December 2011, the trial court denied KLAS's motion. In so doing, the trial court noted:

In this case, just like the sale or division cases, we have owners of undivided property interest—multiple tax liens. The only way to resolve the situation is a sale. To accomplish this, someone must rise to the occasion and take legal action. The legal action benefits each of the other owners of the property interest. If the party bringing legal action is punished, by losing most of the costs expended, then the other parties unfairly benefit from the one-sided payment of the costs of litigation. This would discourage parties from initiating any action and more conflicts would remain unresolved. Equity demands that costs actually expended by the initiating party be repaid prior to the division of the remaining proceeds.

The bottom line is that costs expended by Tax Ease in filing and pursuing this action directly benefitted KLAS and the other lien holders. Fairness should dictate that they be repaid for this expense prior to dividing the booty.

KLAS thereafter filed an appeal in this Court.

During the same time period as the instant matter, Tax Ease and KLAS were also involved in litigation in the Graves Circuit Court concerning the identical issue. On September 16, 2011, that court rendered an opinion in favor of KLAS, ruling that Tax Ease was not entitled to receive the costs of litigation prior to the pro rata distribution of other tax liens. Tax Ease appealed that decision to this Court. As a result, on January 9, 2012, KLAS filed a motion in this Court to consolidate the Graves and Logan Circuit Court appeals. Tax Ease thereafter moved to dismiss its appeal in the Graves County matter. The motion was granted in May 2012. Finally, it should be noted that Tax Ease has not participated in the instant appeal.

KLAS argues in this Court, as it did below, that pursuant to KRS Chapter 134, tax liens not only have priority over all other obligations but are equal in priority to each other. Further, under the plain language of KRS 134.420 and KRS 134.452, the liens include the costs associated with the litigation and collection of such. KLAS points out that it is not contesting Tax Ease's right to collect costs, only the manner in which the trial court bifurcated the lien which essentially afforded Tax Ease "super priority" to its costs over the other tax liens against the property. KLAS asserts that Tax Ease's costs of $501.04 should have been added to the unpaid taxes due, which would have brought the total to $8,126.34. Such amount should have then been distributed on a pro rata basis.[1]

KRS Chapter 134, amended in 2009 and again in 2012, contains specific statutes governing the collection of delinquent tax bills by third-party purchasers. KRS 134.452(5) provides that third-party purchasers are entitled to costs associated with the collections remedies:

> In addition to the fees established by subsections (1), (2), and (4) of this section, a third-party purchaser may collect actual, reasonable attorneys' fees and costs that arise due to the prosecution of collection remedies or the protection of a certificate of delinquency that is involved in litigation. Fees and costs permitted under this subsection include fees and costs incurred from the first day after the notice required by KRS 134.490(2) is sent through the day any litigation is finally concluded.

Pursuant to the above language, "costs" include all costs incurred after the final collection notice is sent—at least 45 days prior to filing a legal action—through the day litigation is concluded.

■ Significantly, however, KRS 134.420(3) states that an *ad valorem* tax lien:

> **shall include all** interest, penalties, fees, commissions, charges, **costs,** attorney fees, and other expenses as provided by this chapter that have been incurred by reason of delinquency in payment of the tax claim certificate of delinquency, personal property certificate of delinquency, or in the process of collecting any of them, and shall have priority over any other obligation or liability for which the property is liable.

(Emphasis added). The trial court correctly pointed out that the term "costs" is not specifically defined in KRS 134.420. However, when a legal term is not defined in a statute, courts have often adopted the

---

1. Adding Tax Ease's court costs to the amount it was owed would have increased its pro rata share to 67.8% of the proceeds.

everyday meaning in an attempt to "accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Bailey v. Reeves,* 662 S.W.2d 832, 834 (Ky.1984). As noted by our Supreme Court in *Bowling v. Kentucky Department of Corrections,* 301 S.W.3d 478, 490–91 (Ky.2009), it is the court's objective "to give effect to the intent of the General Assembly, and we derive that intent, if at all possible, from the plain meaning of the language the General Assembly chose."

*Black's Law Dictionary* (7th ed. 1999) defines "costs," in part, as:

> 2. The charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees.— Also termed court costs. 3. The expense of litigation, prosecution, or other legal transaction, esp. those allowed in favor of one party against the other.— Also termed litigation costs.

Certainly, adopting the *Black's Law Dictionary* definition when interpreting the term "costs" in KRS 134.420 does not lead to an absurd or wholly unreasonable result, and we must agree with KLAS that affording the term its common and ordinary meaning compels a finding that such includes the litigation and court costs at issue herein. It follows then, that KRS 134.420 and KRS 134.452 permit recovery of the costs associated with the collection of delinquent tax bills as part of the lien, i.e., included in the total payoff. When the proceeds are sufficient to cover all of the tax liens, payment of costs is not an issue. However, when the proceeds are insufficient to pay all of the liens in full, each third-party purchaser is entitled only to its pro rata share.

Clearly, KRS 134.420 affords all *ad valorem* tax liens equal priority. "In establishing liens resulting from *ad valorem* taxes, it is noteworthy that the statutory language grants priority to the *lien* and not the lien holder." *U.S. Bank National Association v. Tax Ease Lien Investments 1, LLC,* 356 S.W.3d 770, 772, (Ky.App.2011). Moreover, we believe that the statutory language plainly dictates that costs are to be included in the amount of the lien. Had the Legislature intended to grant one third-party purchaser priority over another with respect to costs, it would have so explicitly provided for such. In fact, we are of the opinion that KRS 134.452(5) is a clear indication that the Legislature carefully considered the rights and regulations of third-party purchasers:

> The General Assembly recognizes that third-party purchasers play an important role in the delinquent tax collection system, allowing taxing districts to receive needed funds on a timely basis. The General Assembly has carefully considered the fees and charges authorized by this section, and has determined that the amounts established are reasonable based on the costs of collection and fees and charges incurred in litigation.

In its August 17th order, the trial court opined that Chapter 134 provides no guidance with respect to the relative priority of claims in the event that the proceeds of the Master Commissioner Sale are insufficient to pay the tax liens in full, as was the case herein. As such, the trial court relied upon KRS 91.517 for the legal authority to award costs prior to the pro rata distribution of the other tax liens. We believe that such reliance was misplaced.

KRS Chapter 91 is also known as the Mass Foreclosure Act. KRS 91.517, last amended in 1992, sets forth the procedures to be followed after a Master Commissioner Sale and provides, in relevant part:

> If the sale is confirmed, the court shall order the proceeds of the sale applied in the following order:

(a) To the payment of all costs including court costs, publication costs, and costs otherwise associated with the action and sale of the parcel described in the particular count; and

(b) To the payment of all tax bills on the property, including principal, interest, and penalties.

KRS 91.517(2). As it relates to priority and court costs, KRS 91.517[2] and KRS 134.420 appear to be in conflict.

In *City of Bowling Green v. Board of Education of Bowling Green Independent School District*, 443 S.W.2d 243, 247 (Ky. 1969), our then-highest Court held:

There are three established rules of statutory construction.... These rules are: (1) That it is the duty of the court to ascertain the purpose of the General Assembly, and to give effect to the legislative purpose if it can be ascertained; (2) that conflicting Acts should be considered together and harmonized, if possible, so as to give proper effect and meaning to each of them; and (3) that as between legislation of a broad and general nature on the one hand, and legislation dealing minutely with a specific matter on the other hand—the specific shall prevail over the general.

Further, "[w]here two statutes deal with common subject matter, the one dealing with the subject in a minute way will prevail over the general statute. This is especially true where the special act is later in point of time." *Id.* (Quoting *Morton v. Auburndale Realty Company*, 340 S.W.2d 445 (Ky.1960)).

KRS Chapter 134 was amended later in time and is more specific to the enforcement of delinquent tax bills and the priority afforded to third-party purchasers than is KRS 91.517. In revising KRS Chapter 134 in 2009, it was clearly the intent of the Legislature to afford all tax liens equal and superior priority to other liens. Moreover, it is obvious from KRS 134.452(5) that in drafting KRS Chapter 134, the Legislature thoroughly considered the rights of third-party purchasers in the collection of tax liens. Accordingly, KRS Chapter 134, not Chapter 91, governs the process utilized by third-party purchasers.

For the reasons stated herein, we conclude that the trial court erred in awarding Tax Ease its costs prior to the pro rata distribution of the proceeds of the judicial sale. The Legislature has explicitly stated that all tax liens are equal in priority and, while the third-party purchaser who initiates the foreclosure action is entitled to costs, such are included within the lien itself. In the event that the proceeds are insufficient to pay all tax liens, as occurred herein, that purchaser is only entitled to a pro rata share of its lien, including the costs associated therewith. We believe that such procedure not only gives effect to the intent of the Legislature but is also sound public policy. To hold that the first third-party purchaser to file the action is somehow entitled to "super priority" over the other lien holders would create an untenable situation and lead to a race to the courthouse steps. Rather than working with homeowners to resolve the delinquent tax liens without litigation, such a precedent would result in increased and unnecessary foreclosure filings.

The Logan Circuit Court's August 17th order of distribution is hereby vacated and

---

2. We would point out that although much discussion was had in the trial court about KRS 91.517, we question its applicability to third-party purchaser situations. Chapter 91 sets forth the procedural guidelines for enforcement of tax liens by cities of the second through the fifth class. The subject foreclosure action was filed by a third-party purchaser to enforce tax liens created in favor of Logan County.

this matter is remanded for further proceedings consistent with this opinion.

CAPERTON, Judge, concurs.

COMBS, Judge, concurs in result only.