**John S. FORD, Trustee for the Marie W. Ford Family Trust, Appellant**

v.

**Rhoda FALLER and Kentucky Elder Law, PLLC, Appellees.**

No. 2013–CA–001298–MR.

Court of Appeals of Kentucky.

May 30, 2014.

Rehearing Denied July 17, 2014.

---

Harry B. O'Donnell, IV, Louisville, KY, for appellant.

Patrick T. Schmidt, Louisville, KY, for appellee.

Before JONES, LAMBERT and STUMBO, JUDGES.

*OPINION*

JONES, Judge:

The Appellant, John S. Ford, Trustee for the Marie W. Ford Family Trust, appeals from the Jefferson Circuit Court's order granting summary judgment in favor of the Appellees, Rhoda Faller and Kentucky Elder Law, PLLC. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

In February 2006, John S. Ford was appointed to serve as the trustee of the

Marie W. Ford Family Trust ("the Family Trust") and as guardian of his mother, Marie W. Ford. The trust was composed of various investment accounts and real property located in Kentucky and in Oklahoma.

Marie Ford was a resident of the Sacred Heart Nursing Home. At some point, certain issues arose regarding payment for her nursing home expenses. On June 6, 2006, by way of order from the Jefferson District Court, John Ford was removed as Marie Ford's guardian, and GuardiaCare was appointed as the successor guardian. Despite the change in guardianship, John Ford remained the sole trustee of the Family Trust.

Sometime later, a dispute arose between GuardiaCare and John Ford, in his capacity of trustee, regarding whether he was required to sell the Family Trust's real property in Kentucky in order to pay for Marie Ford's nursing home care. Eventually, GuardiaCare moved the district court for leave to hire counsel to assist it in obtaining payment from the Family Trust. On December 4, 2008, the district court granted GuardiaCare's motion and appointed Faller, an employee of Elder Law, PLLC, to "take legal steps necessary to require the Marie Ford Family Trust to pay for the nursing home care of Marie Ford, at the rate of $150.00 an hour, the money to be paid from the funds of the trust."

Thereafter, Faller, acting on behalf of GuardiaCare, instituted a civil action in Jefferson Circuit Court against John Ford in his capacity as trustee seeking to require the Family Trust to pay for Marie Ford's nursing home care. After Marie Ford passed away on March 4, 2009, the parties agreed to dismiss the circuit court action. On March 6, 2009, Faller filed an attorney's lien pursuant to KRS[1] 376.460

1. Kentucky Revised Statutes

on the property the trust owned in Kentucky in the amount of $4,357.50 plus interest at the rate of 12% per annum. Faller attached a copy of the district court's December 4, 2008, order as well as her billing records to the lien.

On June 11, 2010, Michael J. Ford, John Ford's son, purchased the Kentucky property from the Family Trust. The lien did not prevent the sale, but a portion of the proceeds representing the lien amount was placed in escrow. By letter dated the same day as the sale, the Family Trust sent correspondence to Faller notifying her that based on its interpretation of KRS 376.460, her lien was possibly in violation of KRS 434.155.[2]

On August 11, 2010, the Family Trust filed suit against Faller in Jefferson Circuit Court seeking compensatory and punitive damages under KRS 446.070[3] for Faller's violation of KRS 434.155. Faller released the lien five days later, on August 16, 2010.

On April 4, 2013, the trial court granted Faller summary judgment. The trial court held as a matter of law that Faller did not violate KRS 434.155 by filing her attorney lien:

> KRS 376.460 [the attorney's lien statute] is a relatively narrow statute that is all too often broadly misapplied. Ms. Faller's lien, while inappropriate was not forged or false, nor did it contain a material misstatement. As such, even in the light most favorable to Mr. Ford, it cannot be fairly said that she acted in violation of KRS 434.155. While the

Court recognizes and appreciates how the Trust may feel genuinely aggrieved by the placement of the lien, in the absence of a violation of KRS 434.155 it would not be possible for the Trust to prevail at trial.

This appeal followed.

## II.  STANDARD OF REVIEW

Pursuant to CR[4] 56.03, summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001) (quoting *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991)).

When reviewing a motion for summary judgment, a trial court must be mindful that its role is to determine whether disputed material facts exist; it is not to decide factual disputes. As our Supreme Court recently reminded us:

> Summary judgment is to be "cautiously applied and should not be used as a substitute for trial." Granting a motion

---

**2.** This statute provides in relevant part: "1) A person is guilty of filing an illegal lien when he files a document or lien that he knows or should have known was forged, groundless, contained a material misstatement, or was a false claim. It shall be an affirmative defense that any material misstatement was not intentional."

**3.** This section provides: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

**4.** Kentucky Rules of Civil Procedure

for summary judgment is an extraordinary remedy and should only be used "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists.

*Shelton v. Kentucky Easter Seals Soc., Inc.,* 413 S.W.3d 901, 905 (Ky.2013) (internal citations omitted).

Because summary judgment involves no fact-finding by the trial court, we accord no deference to the trial court's decision; our review is *de novo. See Davis v. Scott,* 320 S.W.3d 87, 90 (Ky.2010) (citing *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.,* 174 S.W.3d 440, 445 (Ky. 2005)).

## III. ANALYSIS

■ While the illegal lien statute, KRS 434.155, does not provide for a private civil action, KRS 446.070 permits "[a] person injured by the violation of any statute" to sue for "such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." "KRS 446.070 merely codifies the common law concept of negligence *per se.* It applies only if the alleged offender has violated a statute and the plaintiff was in the class of persons which that statute was intended to protect." *Davidson v. American Freightways, Inc.,* 25 S.W.3d 94, 100 (Ky.2000) (citing *Hackney v. Fordson Coal Co.,* 230 Ky. 362, 19 S.W.2d 989 (1929)). Moreover, "[t]he statute must have been specifically intended to prevent the type of occurrence that took place, and the violation must have been a substantial

factor in causing the result." *Hargis v. Baize,* 168 S.W.3d 36, 46 (Ky.2005).

With these standards in mind, we turn to the specific criminal statute at issue, KRS 434.155. This statute makes it a felony for a person to file "a document or lien that he knows or should have known was forged, groundless, contained a material misstatement, or was a false claim." It further provides that "it shall be an affirmative defense that any material misstatement was not intentional." The statute requires proof of culpable mental state before guilt can be established for its violation; it is not a statute that imposes strict criminal liability.

The lien Faller filed states:

Notice is hereby given that the undersigned hereby asserts, pursuant to KRS 376.460, an "Attorney's Lien" in the amount of Four Thousand Three Hundred Fifty Seven Dollars and Fifty Cents ($4,357.50) plus interest at the rate of 1% per month (12% per annum) or any unpaid balance, against all recoveries in the above action and against hereinafter described property, or the proceeds resulting from any sale or mortgage of the hereinafter described property which property is more particularly described on the attached "Exhibit A."

Attached hereto as "Exhibit B" is a copy of the order by Judge Janice Martin that Rhoda Faller be paid from the proceeds of the sale of the property described in Exhibit A.

Attached hereto as "Exhibit C" is an itemization of billing for services rendered at the Court ordered rate of $150.00.

The Family Trust has not alleged that the lien or its attachments are forged, contain a material misrepresentation or somehow comprise a false claim. Rather, the Family Trust alleges in its complaint

against Faller, that "there is nothing in the provisions of KRS 376.460 which ever grants an attorney a lien upon any real property [and] because nothing in the provisions of KRS 376.460 permits or allows an attorney to assert or file a lien against real property," Faller's lien "was legally and factually groundless, and was not a legitimate claim to a lien against the real property."

Kentucky's current attorney's lien statute, KRS 376.460, became effective June 19, 1976. It provides:

Each attorney shall have a lien upon all claims, except those of the state, put into his hands for suit or collection or upon which suit has been instituted, for the amount of any fee agreed upon by the parties or, in the absence of such agreement, for a reasonable fee. If the action is prosecuted to a recovery of money or property, the attorney shall have a lien upon the judgment recovered, legal costs excepted, for his fee. If the records show the name of the attorney, the defendant shall be deemed to have notice of the lien. If the parties in good faith and before judgment compromise or settle their controversy without the payment of money or other thing of value, the attorney for the plaintiff shall have no claim against the defendant for any part of his fee.

This statute and the circumstances under which it permits an attorney to file a lien on his client's assets have recently been the subject of a fair amount of litigation. A panel of this Court was recently called upon to address an issue quite similar to the present one in *Ruby v. Scherzer*, 2013 WL 5423067 (Ky.App.2013). Therein, we recounted and summarized the applicable case law as follows:

In *Rice v. Kelly*, 226 Ky. 347, 10 S.W.2d 1112 (1928), the former Court of

Appeals addressed a case involving a suit in equity filed by the attorney of a corporation against both the corporation and its bankruptcy trustee to recover his attorney fees. The Court considered the prior version of the attorney's lien statute, explaining:

[A]n attorney has a general or retaining lien upon all documents, money, or other property of his client coming into his hands professionally until any balance due him for professional services has been paid. 6 C.J. § 368, p. 770; *Sanders v. Seelye*, 128 Ill. 631, 21 N.E. 601 [ (1889) ]; *McPherson v. Cox*, 96 U.S. 404, 24 L.Ed. 746 [ (1877) ]; *In re Hollins*, 197 N.Y. 361, 90 N.E. 997 [ (1910) ]. But this right cannot be exercised unless possession of the money, papers, or property is retained by the attorney. 6 C.J. § 363, p. 766.

The lien given by section 107, Ky. Stats., is limited to claims placed in the attorney's hands for suit or collection, or upon which suit has been instituted, and it has no application to cases of the character here involved. *Wilson v. House* [73 Ky. 406], 10 Bush, 406.

*Rice*, 10 S.W.2d at 1115. In *Rice*, the attorney was seeking a judgment to recover his attorney fees pursuant to the former version of the attorney's lien statute; he was not seeking to enforce a lien without having first obtained a judgment, as Ruby did in the present case.

In *Exchange Bank of Kentucky v. Wells*, 860 S.W.2d 785 (Ky.App.1993), this Court considered the current version of the attorney's lien statute, this time in connection with attorney fees sought for an action for wrongful termination of a lease and failure to properly manage a leasehold. The decision ad-

dressed the relation back and priority of the actual lien.

Kentucky's rule that an attorney's lien relates back to the time of the commencement of services, and that an attorney's lien takes precedence is also the law in other jurisdictions. The enforceability of the attorney's lien is founded upon the theory that the judgment is the product of the services and skill of the attorney. An attorney's lien on the fund that he or she created should be granted priority over set-off judgments. Further, we are persuaded by counsel's argument that the trial court's right to set off one judgment against another is equitable in nature, and thus, the trial court has the power to determine the amount and manner of set-off.

*Wells*, 860 S.W.2d at 787 (internal citations omitted). This case does not address whether the lien was appropriate, but how one that has been properly obtained is treated in conjunction with the rest of the judgment obtained.

We have also reviewed the unpublished opinion in *Meehan v. Ruby*, 2011 WL 1515415 (Ky.App.2011) (2009–CA–002402–MR), a case in which Ruby, the appellant in this case, was an appellee. *Meehan* arose as a result of an earlier domestic action between Ruby and his wife; Meehan represented Ruby's wife in that case. Meehan filed an attorney's lien on their real property after Ruby had been ordered to pay his wife's reasonable legal fees. The Court affirmed the lower court's order finding that the lien was invalid, explaining:

While the attorney's lien statute does not require that money has to be paid on a judgment before an attorney can file a lien as stated in *Arny v. Johnson*, 443 S.W.2d 543, 545 (Ky.1969), the right to file a lien can only arise when the suit handled by the attorney results in the creation or obtaining of attachable assets. *Rice v. Kelly*, 226 Ky. 347, 10 S.W.2d 1112, 1115 (1928).

After reviewing the record, we conclude that Meehan was not entitled to file an attorney's lien against the Rubys' real estate pursuant to KRS 376.460. While we acknowledge Meehan's argument that *Rice* involved an interpretation of an earlier version of our attorney's lien statute, the language of the prior statute and of the present statute are very similar. Additionally, the current statute expressly provides the manner in which a lien may be filed and, while the statute provides a right to a lien in a suit involving the recovery of money or property, it does not authorize a lien in cases without the recovery of attachable assets.

Furthermore, the right to file an attorney's lien is founded upon the theory that the attorney's services and skills produced the property that the client now possesses. *Exchange Bank of Kentucky v. Wells*, 860 S.W.2d 785, 787 (Ky. App.1993). Therefore, consistent with our courts' interpretation of the attorney's lien statute for over a century, we conclude that KRS 376.460 does not permit a lien against property or assets that did not arise directly as a result of the underlying suit. *Wilson v. House*, 10 Bush 406, 73 Ky. 406 (1874). Therefore, because Meehan's legal services did not result in the recovery of any property or money on Josefina's behalf, she was not entitled to file an attorney's lien.

*Meehan*, 2011 WL 1515415 at *2–3.

*Id.* 2013 WL 5423067 at *5–6.

We ultimately held that Ruby, an attorney, could not use KRS 376.460 to recover his fees in the dissolution action because he did not obtain anything in the action to

which a lien could properly attach. *Id.* *Ruby* is currently pending before the Kentucky Supreme Court on a motion for discretionary review.

We do not cite *Ruby,* a nonfinal opinion, as precedent. Rather, our citation is illustrative. We cite *Ruby* to demonstrate that the law regarding attorney liens is not entirely settled or clear. Neither the trial court nor our court insinuated that the appellant in *Ruby* was pursuing a frivolous claim or that his arguments were made in bad faith. Moreover, while we ultimately determined that the lien was improper, we did not treat the lien holder's claim of entitlement lightly or regard the appeal as a frivolous one. Rather, our careful review of the case law demonstrated that there is scarce authority interpreting and/or applying the current attorney's lien statute since its effective date in 1976 or examining its underlying purpose. Certainly, there has been no pronouncement from our modern day Supreme Court on the issue. And, no court appears to have addressed a factual scenario like Faller's situation where she possessed an order providing for her retention, hourly rate, and source of payment.

■ The touchstone of this appeal centers on whether Faller's lien can be considered "groundless" under the circumstances. The term "groundless" is not defined by the statute. When a legal term is not defined in a statute, courts have often adopted the everyday meaning in an attempt to "accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Bailey v. Reeves,* 662 S.W.2d 832, 834 (Ky.1984). As noted by our Supreme Court in *Bowling v. Kentucky Department of Corrections,* 301 S.W.3d 478, 490–91 (Ky.2009), it is the court's objective "to give effect to the intent of the General Assembly, and we derive that intent, if at all possible, from the plain meaning of the language the General Assembly chose."

"Groundless" is defined as "lacking a basis or a rationale." Black's Law Dictionary (9th Ed.2009); *see KLAS Properties, LLC v. Tax Ease Lien Investments 1, LLC,* 407 S.W.3d 564, 566 –567 (Ky.App. 2013) (relying on Black's Law Dictionary for ordinary meaning). We find this definition of groundless, *i.e.,* lacking any factual or legal basis or rationale, to be appropriate and in accord with the General Assembly's intent and purpose.

Against this backdrop, it is difficult to see how Faller's lien could be considered "groundless" such that it might expose her to criminal liability. In the context of a civil claim for malicious or wrongful prosecution, we have narrowly construed the conduct necessary to comprise baseless or groundless actions in similar contexts:

Although proof that an attorney initiated civil proceedings when he was ignorant of the law and failed to research it would be evidence bearing on lack of probable cause, here it must be said that even if mistaken, Prewitt's views of the law were not arbitrary and unreasonable. If not correct, at the least he had viable arguments to support his position. A view of the law that is arguably correct cannot be the basis upon which to charge lack of probable cause. As with the attorney's understanding of facts, all that is required to establish probable cause is that the attorney's view of the law is a tenable position. The question of probable cause underlying the tort of wrongful use of civil proceedings does not turn on whether a court subsequently decides the attorney erred in his view of the law, any more than it turns on whether he was subsequently unable to prove his client's claims regarding the facts, so long as his views were tenable at the outset.

*Prewitt v. Sexton,* 777 S.W.2d 891, 897 (Ky.1989). We see no reason or purpose for construing the criminal definition of groundless to be any broader than that applied in the civil law context.

Assuming, as we must on summary judgment, that the Family Trust's allegations are correct with respect to whether Faller was legally entitled to file the lien under KRS 376.460, we nonetheless do not believe that her interpretation of the statute was so unreasonable as to make her conduct criminal under KRS 434.155.

Furthermore, we believe that the General Assembly's purpose in adopting KRS 434.155 was to protect individuals from liens that are forged, false, or fraudulent. In the case of an attorney's lien, the statute would be violated where an attorney filed a lien related to a matter for which she never worked, misrepresented the nature of fee she was due, or the like. We do not believe that the statute was designed to criminalize a mistaken legal interpretation like the present.

The Family Trust cites to *Kentucky Bar Ass'n v. Glidewell,* 348 S.W.3d 759 (Ky. 2011), to support its contention that Faller's lien was illegal under KRS 434.155. *Glidewell* is an attorney discipline case. Glidewell was retained to represent Dwight Henning in a divorce action in April of 2004. This representation continued through November 2004, at which time Glidewell withdrew from her representation of Henning, who owed her approximately $2000 in fees for services rendered. During Henning's marriage to his wife, Genella Shaheen, the couple resided in a home that was Shaheen's premarital property (the residence). Henning had also entered into a postnuptial agreement disclaiming any interest in the residence. In February 2005, Glidewell filed a notice of attorney's lien upon the residence to secure payment of fees earned from Henning. In that notice, Glidewell maintained that she still represented Henning even though her representation of him ended in November of 2004. Henning, in April 2005, entered into an agreement with Shaheen to execute a quitclaim deed conveying any interest in the residence to her. Sheehan repeatedly requested that Glidewell remove the lien from the residence. However, Glidewell refused to do so. Eventually, Shaheen sued Glidewell. After mediation, Shaheen was awarded $12,500 in damages and only after mediation did Glidewell remove the lien. At disciplinary proceedings against Glidewell, Shaheen testified that she had attempted to refinance the residence when the lien was attached but was unable to do so because of the lien.

Amongst numerous other ethical violations, the Court found Glidewell's actions violated KRS 434.155. The Court, quoting the findings of the trial commissioner, noted that Glidewell "knew or should have known that the lien she filed was groundless, contained a material misstatement, or was a false claim ..." and stated that Glidewell's "failure to remove the lien until she was sued establishes at the very least that she left the lien in place for an improper purpose, *i.e.,* to leverage payment from her client who she by that time knew had no interest in the property."

While Ford is correct that an attorney's lien coupled with an attorney's conduct may rise to a level of criminal conduct violating KRS 434.155, Glidewell's conduct and representations vis-à-vis her attorney lien are very different from the instant case. Glidewell filed a lien on property her client never owned, she falsely represented that she represented Henning when she filed her lien, and she refused to remove the lien for some time. In contrast, Faller had an order from the district court appointing her as counsel. The order

specified both her hourly rate and that she was be to be paid from the Family Trust's assets. Faller filed her lien on property owned by the Family Trust, and she removed it after the Family Trust filed suit.

In addition to the factual distinctions between this case and *Glidewell,* we would be remiss if we did not point out that *Glidewell* is an attorney discipline case. Our Supreme Court has recognized that "each case involving attorney discipline is factually unique." *Kentucky Bar Ass'n v. Rorrer,* 222 S.W.3d 223, 229 (Ky. 2007). Moreover, the standards for imposing attorney discipline are different than those necessary to impose criminal liability under our penal statutes. *See Kentucky Bar Ass'n v. Edwards,* 377 S.W.3d 557, 563 (Ky.2012).

In conclusion, having reviewed the record, we find no evidence to support the Family Trust's claim that Faller filed an "illegal lien" pursuant to KRS 434.155. The lien was not forged, it did not contain any false statements, and it was not a false claim for money not due Faller. Furthermore, even if we were to assume that the lien was improper under KRS 376.460, we do not believe as a matter of law that the relevant statute and interpreting case law was so clear and well established in this area as to make Faller's lien a legally groundless one. In other words, given the facts and the law, we believe that Faller had a reasonable argument that the law should be interpreted, applied, modified and/or extended to allow her to file her lien under KRS 376.460. Accordingly, we find no error in the trial court's decision awarding Faller summary judgment.

We pause briefly to address the Family Trust's additional argument that the trial court committed reversible error when it relied on the unsworn statements of fact and unsworn and uncertified documents attached to Faller's motion for sum-

mary judgment. Having reviewed the trial court's opinion and order, we do not believe that it is based on any "unsworn statements" of *material* fact by counsel or on uncertified documents that were not already part of the record.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. "[O]n a motion for summary judgment the court is entitled to consider any evidentiary matter that has been presented to the court at any stage of the proceedings in the case." *Collins v. Duff,* 283 S.W.2d 179, 183 (Ky.1955). Additionally, "an exhibit which is evidentiary in nature ... may be properly regarded the same as would be an uncontradicted supporting affidavit." *Daniel v. Turner,* 320 S.W.2d 135, 137 (Ky.1959).

The exhibits attached to Faller's motion for summary judgment were documents that the Family Trust filed as part of its complaint. As these exhibits were documents attached to a pleading, the trial court did not err in considering them.

## V. CONCLUSION

For the forgoing reasons, we affirm the order of the Jefferson Circuit Court.

ALL CONCUR.